**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

```
ANGEL CABRERA-NEGRON          *
                              *
      Plaintiff               *
                              *
v.                            *      Civil No. 03-1935(SEC)
                              *
MUNICIPALITY OF BAYAMON,      *
 et al                        *
                              *
      Defendants              *
**********************************
```

**OPINION AND ORDER**

Before the Court are three separate motions for summary judgment filed by different groups of defendants, to wit: (1) the Municipality of Bayamón and the individual defendants in their official capacity (see Docket # 81), (2) Lt. Wilfredo López Martínez (see Dockets ## 82 & 83), and (3) Co-defendants Commissioner Edwin Rosado, Miguel Girod, Benjamín Rivera, Sixto Jeannot, Geraldo Coriano, and Harry Bonet in their individual capacities (see Dockets ## 84 & 85). Plaintiff opposed all three motions for summary judgment and filed a statement of contested material facts (Dockets ## 98 & 99). The Municipality of Bayamón and Defendants in their official capacity replied (Docket # 115), as did Co-defendants Rosado, Girod, Rivera, Jeannot, Coriano and Bonet, who also filed a statement and counterstatement of uncontested facts (Dockets ## 117 & 118). After examining the parties' filings and the applicable law, for the reasons set herein, Defendants' Motions for Summary Judgment will be **GRANTED**.

**I.   Standard of Review**

Fed. R. Civ. P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions,

**Civil No. 03-1935**                                                                                                          2

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting from Garside, 895 F.2d at 48 (1st Cir. 1990). By like token, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo, 394 F.3d 40, 42-43 (1st Cir. 2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Id (citations omitted).

In order to defeat summary judgement, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See, Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d

**Civil No. 03-1935**                                                                                                                                3

957, 960 (1st Cir. 1997). Once the party moving for summary judgement has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the 'party opposing summary judgement must present definite, competent evidence to rebut the motion.' Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8, (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

When determining whether to grant summary judgment, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Id at 684.

**II.    Factual Background**

Before narrating the story, we take a brief look at the key players. Plaintiff, Mr. Angel Cabrera Negrón, is a state police officer who at the time of the events leading up to the arrest was not engaged in official duties. Mr. José Cintrón is not a party to this case but, along with Mr. Cabrera, was a protagonist of a traffic incident and later complained to the Municipal

**Civil No. 03-1935**                                                                                                           4

Police about Mr. Cabrera Negrón's behavior during that incident. Co-defendants Mr. Rivera, Mr. Bonet, Mr. Jeannot, Mr. Girod, and Mr. Coriano are all municipal police officers who went to Plaintiff's residence after the traffic incident between Plaintiff and Mr. Cintrón had taken place. These Co-defendants later placed Plaintiff under arrest. Mr. López Martínez is a state police officer who filed a criminal charge against Plaintiff after his arrest and as a result of what ensued during the traffic incident mentioned above. Co-defendant Mr. Edwin Rosado is the Police Commissioner of the Municipality of Bayamón's Police Department and is and was at the relevant time Co-defendants Rivera's, Jeannot's, Girod's, Coriano's, and Bonet's supervisor. All Co-defendants except for Mr. López Martínez were employed by, or were stationed at, the Municipality of Bayamón, also a Co-defendant in this action.

The prelude to the arrest and subsequent police procedures that motivated the current lawsuit took place on the morning of August 27, 2002, while Plaintiff was driving near "Ciudad del Niño" in Bayamón (Docket # 29, ¶¶ 14-15). The driver of another car, Mr. José Cintrón, had stopped in the middle of the road while he engaged in a conversation with a pedestrian (Id, ¶¶ 15-17). Plaintiff, who was stuck in traffic while Mr. Cintrón chatted, stepped out of his vehicle and approached Mr. Cintrón's car (Id, ¶ 18). What happened next is not clear, as the parties have differing accounts. Plaintiff alleges that he requested that Mr. Cintrón move his vehicle in order to allow the other cars to flow freely and that Mr. Cintrón responded by addressing Plaintiff in a foul manner and later driving away in a reckless fashion (Id, ¶¶ 18-23). Co-defendants tell a different story, one consonant with Mr. Cintrón's version of the facts. According to that version, Plaintiff approached Mr. Cintrón's car using vulgar language, hit it with a nightstick, ordered Mr. Cintrón to move along, and, as the discussion between them progressed, set off the security mechanism of the gun that he carried underneath his shirt, spurring Mr. Cintrón to leave the scene (See Docket # 85, SUF # 11 & Docket # 83-1, SUF ## 3-6). This controversy need not detain us. There is no doubt that Plaintiff approached Mr. Cintrón's car, that the two engaged in a less than

amicable discussion and that Mr. Cintrón then drove away.

From this point forward, though the parties tell similar tales, they differ on some points and quibble over the exact manner in which events occurred and their significance. It is clear, however, that after both Mr. Cintrón and Plaintiff abandoned the place of their discussion, the former complained to the municipal police about what had occurred (Docket #121, Ex. 9-B). Co-defendants assert that in his complaint Mr. Cintrón recounted that Plaintiff struck his car with the nightstick and unlocked the safety mechanism of his gun (Docket #99, Ex. 5, P. 60-61). Plaintiff denies any wrongdoing.

While complaining to Agent Rivera about what transpired, Cintrón provided the license plate number of Plaintiff's car, which he had written down after the incident (Docket #99, Ex. 5, P. 69). Armed with that number, Agent Rivera had the municipal police find out the address of the vehicle's owner, i.e., Plaintiff (Id). Agent Rivera then set out towards Plaintiff's house, as did other municipal agents: Jeannot, Bonet, and Coriano (Docket #99, P. 26-28). Once there, these agents informed Plaintiff that a complaint had been filed against him and repeatedly requested that he turn over his official firearm (Docket # 99, Ex. 1, P. 101). Plaintiff in turn informed that he was a state police officer and refused to turn over the gun, stating that it would be contrary to regulation to hand over his firearm in such circumstances. (Id). Co-defendant Girod then arrived at the scene and renewed the other officers' failed attempt at having Plaintiff hand over his firearm (Id at P. 104). That course of action being fruitless, Co-defendant Girod requested that Plaintiff accompany them to the place of the incident (Docket # 99, ¶ 19). Plaintiff agreed (Id), and each then boarded his own vehicle, Plaintiff his and the municipal officers theirs, and drove off. (Docket #99, Ex. 5, P. 87). En route, however, the procession stopped and the municipal agents placed Plaintiff under arrest and took his firearm from him. (Docket # 99, Ex. 5, P. 102). This was the result of Co-defendant Girod's belief that they were not doing things correctly, inasmuch as they were allowing an armed suspect to have continued access to his firearm (Id).

**Civil No. 03-1935**                                                                                          6

Plaintiff, now arrested, was then taken to the municipal police headquarters and placed on a cell where he would remain some four hours (Docket # 99, ¶ 26). Subsequent to the arrival at the municipal police headquarters the following events took place: a state police officer, Lt. López Martínez, along with the complainant, surveyed the damage allegedly inflicted on the complainant's car by Plaintiff's nightstick (Docket # 99, ¶ 32); a district attorney was consulted and she ordered that criminal charges be filed only for damages (Docket # 99, Ex. 5, p.125); a meeting took place between Plaintiff, his supervisor, agents Rivera, Girod, López Martínez, and the complainant, Mr. Cintrón (Docket # 99, ¶ 31). Plaintiff was then released (Docket # 29, ¶ 50).

Little remains that need concern us: a hearing was held where a Magistrate determined there was probable cause to go forward with the damages charge, but on a later hearing, the District Attorney asked for the charges to be dropped. (Docket # 121, Ex. 6[1] & Docket # 29, ¶¶ 52-54). This lawsuit ensued.

**III.    The Motions**

Three motions for summary judgment were filed. The Municipality of Bayamón and the individual defendants in their official capacity argue that summary judgment in their favor should be granted because: (1) The Municipality of Bayamón cannot be held liable under the supervisory liability doctrine, (2) the individual co-defendants who participated in Plaintiff's arrest were acting lawfully, and (3) Plaintiff suffered no more than a minor inconvenience as a result of Defendants' actions (Docket # 81-2, p. 2). Co-defendant Lt. López Martínez moved for summary judgment on the grounds that: (1) he did not participate in Plaintiff's arrest, (2) Plaintiff does not have a viable federal claim for malicious prosecution, (3) Co-defendant López-Martínez, a state police officer, is entitled to Eleventh

---

[2] This Exhibit was filed in Spanish, despite the fact that Docket # 121 purports to file the English translations of the exhibits filed in support of Co-defendants Rivera's, Girod's, Rivera's, Jeannot's, Coriano's & Bonet's Motion for Summary Judgment. Although the Court has considered the Spanish language Exhibit, the aforementioned Co-defendants are **ORDERED to file the English-language translation of that exhibit by February 22, 2006.**

**Civil No. 03-1935**                                                                                                                    7

Amendment Immunity in his official capacity and qualified immunity in his personal capacity. Finally, Co-defendants Rosado, Girod, Rivera, Jeannot, Coriano, and Bonet, in their individual capacities argue that: (1) Plaintiff has failed to state a viable claim against Co-defendant Rosado, who was a supervisor of the arresting officers and who was not involved in the arrest, (2) Plaintiff's arrest was based on probable cause and therefore any damages suffered as a result thereof are not actionable under Section 1983, (3) Plaintiff does not have a viable federal claim for malicious prosecution, and (4) the moving Co-defendants are entitled to qualified immunity.

Because the Court finds that there is no underlying basis for Plaintiff's Section 1983 claims, it is unnecessary to discuss the other grounds for dismissal, that is, lack of supervisory liability, Eleventh Amendment immunity, qualified immunity and lack of personal involvement in the arrest.

**IV.    Applicable Law and Analysis**

Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. See Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989). There are two essential elements of a Section 1983 claim: "(i)that the conduct complained of has been committed under color of state law, and (ii)that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Martínez v. Colón, 54 F.3d 980, 984 (1st Cir., 1995) , *citing* Chrongis v. Board of Appeals, 811 F.2d 36, 40 (1st Cir., 1987). This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. See Gutiérrez-Rodríguez, 882 F.2d 553, 559 (1st Cir., 1989); Voutour, 761 F.2d 812, 819 (1st Cir. 1985). In turn, this second element of causal connection requires that the plaintiff establish: (1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58

**Civil No. 03-1935**                                                                                                   8

(1978); Gutiérrez-Rodríguez, 882 F.2d at 562; Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989); and (2) that the defendant's conduct was intentional, Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. See Gutiérrez-Rodríguez, 882 F.2d at 562.

Plaintiff asserts two claims which he believes are actionable under Section 1983: illegal arrest and malicious prosecution. The Court shall address each separately.

### A. Malicious Prosecution

Generally, a malicious prosecution claim is not actionable under §1983 because there is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution and, so long as there is an adequate state-law remedy, procedural due process is not offended. Roche v. Hancock, 81 F.3d 249, 256 (1st Cir. 1996). It is an open question, however, whether a section 1983 claim for malicious prosecution may prosper on the basis of an alleged Fourth Amendment violation. Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001).

The fact that there is still doubt as to whether the Fourth Amendment can be the basis of a successful Section 1983 action for malicious prosecution need not detain us. Under binding First Circuit precedent and the facts presented in this case, Plainitff cannot prevail on his Section 1983 claim. Nieves v. McSweeney, *supra*, is particularly on point, and, therefore, we quote liberally from it:

> The appellants assert that they were seized for Fourth Amendment purposes from the time of their arrest through the end of their criminal trial. But this assertion rests on a flawed premise. The tort of malicious prosecution permits damages for a deprivation of liberty –a seizure– *pursuant to a legal process*. Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure). The first of these variations has no bearing here. The appellants were arrested without a warrant and, thus, their arrests –which antedated any legal process– cannot be part of the Fourth Amendment seizure upon which they base their section 1983 claims. (Internal citations omitted.)

**Civil No. 03-1935**                                                                                                                9

Having disposed of a Section 1983 claim for malicious prosecution for a seizure pursuant to a warrantless arrest, the Circuit went on to discuss the possibility of asserting such a claim for a "*post-arraignment* deprivation of liberty, caused by the application of legal process, that approximates a Fourth Amendment seizure". Id. In that case, the plaintiffs had been released on their own recognizance once the criminal charges were filed. After that, they "suffered the stress and anxiety of knowing [...] that criminal charges were pending against them", appeared before the criminal court on a number of times and even endured trial. Id. Those facts, the Circuit found, did not give rise to a violation of the Fourth Amendment:

> The very idea of defining commonplace conditions of pretrial release as a 'seizure' for Fourth Amendment purposes seems to stretch the accepted meaning of the term. After all, a seizure under Fourth Amendment jurisprudence is generally a discrete event, quintessentially an arrest, or at least a physical detention. Thus, seizure jurisprudence traditionally has centered on the initial deprivation of liberty that a seizure of the person entails. Since a seizure is a single act, and not a continuous fact, run-of-the-mill conditions of pretrial release do not fit comfortably within the recognized parameters of the term. Id at p. 55 (internal citations omitted).

Here, Plaintiff's contentions are almost identical to the appellants' in the Nieves case. His seizure, for Fourth Amendment purposes, occurred as a result of an arrest without a warrant and therefore was not pursuant to a legal process. After the legal process was initiated, Plaintiff had to go to court in at least two occasions, but contrary to the plaintiff in Nieves, *supra*, he did not even have to endure trial. The obligation to go to court in relation to the criminal charge and any stress he may have suffered as a result of that criminal process do not, according to Nieves, *supra,* constitute a seizure for Fourth Amendment purposes.

Accordingly, Plaintiff may not assert a Section 1983 claim for malicious prosecution predicated on a violation of his Fourth Amendment Rights. Nor can Plaintiff recover by basing his claim on the Fourteenth Amendment. Puerto Rico offers an adequate state-law remedy in malicious prosecution cases. See, Pérez-Ruiz v. Crespo-Guillén, 25 F.3d 40, 43 (1st Cir. 1994).

**Civil No. 03-1935**                                                                                                                    10

The above-quoted discussion disposes of Plaintiff's Section 1983 claim for malicious prosecution. Accordingly, said claim will be **DISMISSED WITH PREJUDICE**.

**B.     The Arrest**

Where as here, a Section 1983 claim stems from a warrantless arrest, the main inquiry is whether the police had probable cause for the arrest. See, Acosta v. Ames Dep't Stores, Inc., 368 F.3d 5, 9 (1st Cir. 2004) (when there is probable cause for an arrest, the Fourth Amendment's prohibition against unreasonable searches and seizures is not offended), Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003) (for a warrantless arrest, the Fourth Amendment is taken to require probable cause). Because a probable cause determination is preliminary and tentative, the degree of certainty necessary to establish probable cause falls somewhere between bare suspicion and that which would justify a conviction. Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) (internal citations omitted). This leaves a good deal of territory in between. Valente, *supra*. The essential determination for a finding of probable cause is whether, at the time of the arrest, and relying on apparently trustworthy information, the arresting officer could reasonably conclude that a crime had been or was going to be committed and the arrestee was likely responsible for it. Burke, *supra* (internal citations omitted). That conclusion, as stated, need only be reasonable; "the standard does not require the officers' conclusion to be ironclad, or even highly probable." Forest v. Pawtucket Police Dep't, 377 F. 3d 52, 56 (1st Cir. 2004) (quoting from U.S. v. Winchenbach, 197 F.3d 548, 555-556 (1st Cir. 1999).

When making a determination of probable cause, police officers rely on the facts and circumstances known to them at the time of the arrest. Burke, 405 F.3d at P. 80. This includes a credible complaint by a victim. Forest, 377 F. 3d at P. 57. The fact that a police officer may rely on such a complaint prior to making an arrest, or on any other information which can reasonably lead him to believe there is probable cause, does not mean, however, that said officer guarantees "either the accuracy of the information upon which he has

**Civil No. 03-1935**                                                                                    11

reasonably relied or the ultimate conclusion that he reasonably drew therefrom." <u>Burke</u>, 405 F.3d at P. 80.  Moreover, once police officers are presented with sufficient evidence to ground a determination of probable cause, whether in the form of a victim's complaint or any other, they need not conduct any further investigation on that point.  <u>See</u>, <u>Forest</u>, 377 F.3d at P. 57.

Here the municipal police officers arrested Plaintiff without a warrant.  They did so after, first, receiving a complaint about an altercation between Plaintiff and the complainant, in which, per the complainant's account, Plaintiff had hit the complainant's car with a nightstick, and, second, talking with Plaintiff outside his home.  In Puerto Rico, damaging another person's property is a crime, <u>see</u> 33 P.R. Laws Ann. §4285.  Therefore, the first inquiry of probable cause was met, the police could certainly determine that a crime had been committed.

The second prong of probable cause, whether the arrestee was the likely perpetrator of the crime, was also present.  The municipal police had a complaint about a traffic incident that led to Plaintiff hitting another man's car with his police nightstick.  There is nothing to suggest that at the time the municipal police talked with the complainant prior to the arrest they had any reason to believe that the complainant was lying.  Moreover, after talking with Plaintiff outside his home, the police could corroborate some essential parts of the complaint: the complainant had been obstructing traffic, Plaintiff exited his vehicle and approached the complainant's, Plaintiff was carrying his nightstick, and once Plaintiff reached the complainant's car, a hostile, if brief, discussion ensued.  See, Docket 99, Exhibit 1, P. 27, 36-38.  Thus the police had enough information to reasonably conclude that Plaintiff was responsible for a crime, namely, damaging the complainant's car.  Indeed, some time after the arrest Plaintiff went before a magistrate who found probable cause for Plaintiff's arrest, thereby bestowing the judicial blessing on the nascent criminal proceedings.

Plaintiff emphasizes, however, that the municipal police did not conduct any further

**Civil No. 03-1935**                                                                                                          12

investigation. That, however, does not affect the determination that the police had probable cause. As stated before, once the police have sufficient information to conclude that there is probable cause for an arrest, they need not investigate that point any further. See, Forest, 377 F. 3d at P. 57.

The existence of probable cause notwithstanding, Plaintiff argues that the municipal police are still liable for his arrest because they did not have the authority to arrest him. To that end, Plaintiff argues that in Puerto Rico, a municipal police officer's authority to arrest is the same as a private person's, see 34 P.R. Laws Ann. App. II R. 12 and Pueblo v. Cruz Calderón, 2002 TSPR 5, and therefore, under state law, a municipal police officer may only arrest a person when: (a) an offense has been attempted or committed in his presence or (b) when a felony has been in fact committed, and he has reasonable cause for believing that the person arrested committed it. Id. Since the offense in this case was a misdemeanor, see, 33 P.R. Laws Ann. §4285, not a felony, and it did not occur in the officers' presence, Plaintiff argues that the municipal police officers could not legally arrest him.

Plaintiff raises an interesting argument as to the legality of the arrest. However, this alleged violation would be of Puerto Rico law, and not of the U.S. Constitution or federal law. "It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim [...] not every transgression of state law does double duty as a constitutional violation." Martínez v. Colón, 54 F.3d 980, 989 (1st Cir. 1995). Plaintiff's contention regarding the officers' authority to carry out his arrest does not impinge on the provinces of federal law and, as such, does not, by itself provide the necessary underlying foundations for a Section 1983 claim. Accordingly, Plaintiff's Section 1983 claim for false arrest will be **DISMISSED WITH PREJUDICE.**

**V.**   **Supplemental Law Claims**

Having dismissed Plaintiff's federal law claims against Defendants, we will similarly dismiss Plaintiff's Commonwealth law claims against them. See, Newman v. Burgin, 930

**Civil No. 02-1935(SEC)** 13
_____

F.2d 955, 963 (1st Cir. 1991) ("[t]he power of a federal court to hear and to determine sate-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit."). Plaintiff's supplemental law claims will be **DISMISSED WITHOUT PREJUDICE.**

**VI.    Conclusion**

For the reasons set forth herein, the Motions for Summary Judgment are **GRANTED**. Plaintiff's federal law claims against Defendants are **DISMISSED WITH PREJUDICE.** Plaintiff's supplemental law claims are **DISMISSED WITHOUT PREJUDICE**. Judgment shall be entered accordingly.

      **SO ORDERED.**

      In San Juan, Puerto Rico, this 13th day of February, 2006.

                                                S/ *Salvador E. Casellas*
                                                SALVADOR E. CASELLAS
                                                U.S. Senior District Judge